**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JACOB JONES, # Y-11598, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-cv-439-MJR |
| | ) | |
| JACQUELINE LASHBROOK, | ) | |
| BETSY SPILLER, DIRECTOR I.D.O.C., | ) | |
| WEXFORD MEDICAL SOURCES, | ) | |
| SUZANN BAILEY, | ) | |
| and COMMISSARY OWNERS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

Plaintiff, currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants conspired to serve a soy-based diet at Pinckneyville and make money from increased commissary sales. Plaintiff believes that his consumption of soy has caused him to suffer medical problems. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in

fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000).  An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557.  Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*.  At the same time, however, the factual allegations of a pro se complaint are to be liberally construed.  *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

After fully considering and liberally construing the allegations in Plaintiff's complaint, the Court concludes that it fails to state a constitutional claim upon which relief may be granted.

**The Complaint**

Plaintiff's complaint follows a familiar format, incorporating claims and language that have been included in a number of previously-filed lawsuits from other Pinckneyville inmates.  Defendants Lashbrook (Warden), Spiller (Assistant Warden), the Director of the

Illinois Department of Corrections ("IDOC"), Wexford Medical Sources ("Wexford"), Bailey (Food Service Administrator), and the Unknown Commissary Owners, allegedly "conspired to violate Plaintiff's rights by instituting a policy to serve inmates at (IDOC) a soy-based diet" (Doc. 1, p. 6). Plaintiff claims that female inmates are no longer served soy foods after winning a lawsuit, and after that legal victory, the amount of soy fed to the male prisoners increased. When Plaintiff complained to Defendants Lashbrook, Bailey, and Spiller about the soy content of the diet, he was told, "Well, don't eat it, just buy more commissary." *Id*. In Plaintiff's eyes, this proved the conspiracy.

Plaintiff entered IDOC custody on February 26, 2016, and was placed at Stateville Correctional Center. He has been served a soy-based diet ever since. He claims to have experienced "severe medical injuries" as a result. The complaint does not indicate the date when he was moved to Pinckneyville. The allegations suggest that all or most of the following incidents occurred at Pinckneyville.

In March 2016, Plaintiff had two fights with other inmates because of the extreme gas allegedly caused by the soy diet. Between March 21 and 27, 2016, he was so severely constipated that he could not pass stool. On March 28, 2016, he finally had a bowel movement which tore his anus, causing profuse bleeding. Plaintiff wrote three sick call requests which were not answered.

At some point before April 11, 2016, Plaintiff followed a directive posted by Defendant Wexford, directing inmates who have received "unfavorable responses" to forward their complaints to "Wexford Inmate Advocate/Inmate Issues" (Doc. 1, p. 7). On April 11, 2016, Plaintiff's relatives attempted to call a representative of Defendant Wexford without success. On April 13 and 15, 2016, Plaintiff spoke in person to Defendants Lashbrook and Spiller about the

soy diet issue.  He does not further describe what he communicated to them.  In response, he was told to "Man up, or buy commissary."  *Id*.  Defendant Lashbrook stated, "You mistake me for someone who gives a f\*\*k."  *Id*.  Defendant Bailey refused to respond to Plaintiff.

Plaintiff and other inmates spoke to a woman whom he believes is "the owner" of the Pinckneyville commissary.  She "made a smart remark that indicated 'so sue me.'"  *Id*.

Not long before filing the instant suit, Plaintiff endured a four- to six-day bout of severe stomach pains.  He also suffers from severe headaches, in addition to the constipation and gas mentioned above.  He claims that Defendants "knew or should have known" that their actions could cause him injury.

Plaintiff seeks a preliminary injunction, as well as compensatory and punitive damages.

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into the following counts.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.  The designation of these counts does not constitute an opinion as to their merit.  Any other claim that is mentioned in the complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:**   Defendants conspired together to violate Plaintiff's rights by implementing the policy to serve a soy-based diet;

**Count 2:**   Defendant Wexford has been deliberately indifferent to Plaintiff's medical needs by failing to respond to his sick call requests seeking medical attention for the symptoms he attributes to his ongoing consumption of soy products, in violation of the Eighth Amendment;

**Count 3:**   Defendants Lashbrook, Spiller, Bailey, and the IDOC Director have subjected Plaintiff to unconstitutional conditions of confinement by including

significant amounts of soy products in the prison diet, in violation of the Eighth Amendment.

All of these counts shall be dismissed pursuant to § 1915A for failure to state a claim upon which relief may be granted.  However, Plaintiff shall be allowed an opportunity to submit an amended complaint, if facts exist to support the deliberate indifference claim in Count 2.  If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the entire case shall be dismissed with prejudice, and the dismissal shall count as a strike pursuant to § 1915(g).  The amended complaint shall be subject to review under § 1915A.

**Dismissal of Count 1 – Conspiracy**

Plaintiff asserts that the Defendants conspired to violate his civil rights by adopting a policy to feed all inmates a soy-based diet, in order to prompt them to spend more money at the prison commissary.  He also states that Defendants "knew or should have known" that their actions would cause injury to him.  However, his conclusion that the soy diet policy amounted to an unlawful conspiracy is not supported by factual allegations.

Claims of conspiracy necessarily require a certain amount of factual underpinning to survive preliminary review.  *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (quoting *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006)).  "To establish the existence of a conspiracy, a plaintiff must demonstrate that the conspirators have an agreement to inflict injury or harm upon him."  *Sow v. Fortville Police Dept.*, 636 F.3d 293, 304-05 (7th Cir. 2011).  "The agreement may be inferred from circumstantial evidence, but only if there is sufficient evidence that would permit a reasonable jury to conclude that a meeting of the minds had occurred and that the parties had an understanding to achieve the conspiracy's objectives."  *Id*. at 305 (quoting *Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 263 (7th Cir.1999)).

The mere fact that the Defendants in this case had some involvement in making or carrying out the dietary policies does not establish a conspiracy.  The complaint contains no factual support for the idea that the policy to replace meat products in the prison diet with soy was aimed solely at Plaintiff, or that the Defendants had a meeting of the minds to harm Plaintiff (or any other prisoner).  Instead, Plaintiff's claim that Defendants engaged in a conspiracy to harm his health by adopting a soy-based diet rests solely on his own conclusions.  The conclusory statements that Defendants "knew or should have known" that their actions could harm him, and that they acted "maliciously and intentionally" are examples.  Conclusory legal statements such as Plaintiff sets forth in his complaint are insufficient to state a claim that survives review under § 1915A.  *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Furthermore, while Plaintiff may be convinced that consumption of soy is harmful to the general population, evidence proving this theory is shaky at best (see the discussion of **Count 3**), and not sufficient to show that Defendants had knowledge that the prison diet would cause harm.

The complaint also fails to articulate a viable conspiracy claim that Defendants implemented a soy diet in order to generate revenue from the Pinckneyville commissary or to enrich the "commissary owners." Conspiracy is not an independent basis of liability in §1983 actions. *See Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000). "There is no constitutional violation in conspiring to cover up an action which does not itself violate the Constitution." *Hill v. Shobe*, 93 F.3d 418, 422 (7th Cir. 1996).

Plaintiff suggests that the purpose of this particular "conspiracy" was to force inmates to purchase more food at the commissary.  In other words, this scheme was allegedly aimed at taking prisoners' money.  However, Plaintiff did not claim that his money was taken

*without due process of law.*  Even if he had articulated a due process claim, a civil rights action on this basis cannot be sustained if the state provides an adequate legal remedy.  *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy).  The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy for a taking of property, in an action for damages in the Illinois Court of Claims.  *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995).  Because this state remedy is available, Plaintiff cannot maintain a constitutional claim for any deprivation of his money as a result of the Pinckneyville soy diet policy.  Where there is no underlying constitutional claim for this "deprivation," there is likewise no viable civil rights claim for a "conspiracy" to deprive inmates of their funds.

For these reasons, **Count 1** shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Dismissal of Count 2 – Deliberate Indifference to Medical Needs**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition.  A medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997).

"Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk."  *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted).

*See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015).   However, the Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

Here, Plaintiff describes having serious constipation, gas, stomach pains, and severe headaches, and attributes these problems to his consumption of soy food products. According to the complaint, Plaintiff had one bout of painful constipation at the end of March 2016.  He later had "severe stomach pains" for a period of four to six days.  He does not allege that he suffered physical pain from the excessive gas itself, but only that this problem prompted a fight.  He gives no further details regarding the frequency or duration of his headaches.  Taken together, this collection of symptoms – while certainly unpleasant – does not rise to the level of an "objectively serious medical condition" so as to implicate constitutional concerns.

Even if the Court were to accept, for the sake of argument, that Plaintiff's symptoms meet the objective requirement of a deliberate indifference claim, the complaint fails to show that any individual was deliberately indifferent to a risk of serious harm from his condition.  Plaintiff submitted three sick call requests after the constipation episode on March 28, 2016, and got no response.  It is not clear who should have responded or how much time elapsed between Plaintiff's requests.  He then forwarded a complaint to an "Inmate Advocate/Inmate Issues" department under the auspices of Defendant Wexford.  After that, on or about April 11, 2016, Plaintiff's relatives called that department to follow up, but the call(s) were not answered.

Plaintiff does not describe any further efforts on his part to seek medical attention from any individual prison medical provider, and he does not allege that he informed any other Defendant (other than some representative of Defendant Wexford) of the symptoms he was having.  In order to sustain a deliberate indifference claim, Plaintiff must have informed a prison official of his medical condition, and then the official must have failed to take action to mitigate the risk of harm to Plaintiff.  Nowhere in the complaint does Plaintiff claim that this happened.

As for Defendant Wexford, this corporation is contracted to provide medical care for inmates at Pinckneyville, and employs doctors, nurses, and other medical staff to handle prisoners' health needs.  Presumably, Plaintiff's sick call requests would have been directed to one or more of those Wexford employees.  Even if a Wexford employee was deliberately indifferent to Plaintiff's medical needs (which the complaint does not sufficiently allege) Defendant Wexford cannot be held liable solely on that basis.  A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right.  *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).  *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).  None of Plaintiff's allegations suggest that any individual Defendant either acted or failed to act as a result of an official policy espoused by Defendant Wexford.  Indeed, the complaint does not articulate a deliberate indifference claim against any medical provider at the prison.

For these reasons, **Count 2** shall be dismissed without prejudice.  As noted above, Plaintiff shall be allowed to submit an amended complaint to re-plead the deliberate indifference claim in Count 2 against the responsible prison medical provider(s), if he believes facts exist to support a claim that one or more of them knew of his medical complaints, yet failed to act to

mitigate a serious risk of harm to his health.

**Dismissal of Count 3 – Unconstitutional Conditions of Confinement (Soy Diet)**

Plaintiff appears to claim that the Defendants' decision to include soy products in the prison diet, in and of itself, violated the Eighth Amendment.  This claim has no traction.  A number of courts have rejected inmates' claims that consuming soy products in their diet puts them at risk of serious harm.  In *Harris v. Brown*, the court appointed both attorneys and experts for the plaintiffs, but ultimately concluded after reviewing the expert reports and noting the ubiquity of soy in the American diet that "society today simply does not see soy protein as a risk to the general population, much less a serious risk."  No. 07-CV-3225, 2014 WL 4948229 at *4 (C.D. Ill. Sept. 30, 2014).  The court granted summary judgment to the defendants, noting that even if it accepted the plaintiffs' expert opinions, they did not conclusively establish that soy protein created a risk, only that "the safety of soy is a topic of current debate and study."  *Id.*

Other courts have come to the same conclusion, albeit on a less developed record. *See Riley-El v. Godinez*, No. 13-C-8656, 2015 WL 4572322 at *4 (N.D. Ill. July 27, 2015) ("[T]he alleged risks posed by consuming a soy-rich diet do not rise to the level of an Eighth Amendment violation."); *Munson v. Gaetz*, 957 F. Supp. 2d 951, 954 (S.D. Ill. 2013) (finding that defendants were entitled to qualified immunity because no court has found soy to be harmful); *Smith v. Rector*, No. 13-cv-837, 2013 WL 5436371 (S.D. Ill. Sept. 30, 2013) (dismissing claim on vague allegations that prison meals contained too much soy); *Adams v. Talbor*, No. 12-2221, 2013 WL 5940630 (C.D. Ill. Nov. 6, 2013) (dismissing prisoner's claim that a soy-based diet caused him to experience stomach problems).

The court in *Riley-El v. Godinez* took a particularly nuanced approach: they permitted plaintiff to proceed with his claim that he had a serious medical condition for which

soy was contraindicated, but dismissed the claim regarding a soy diet as a condition of confinement.  2015 WL 4572322 at *4-5.  In contrast, Plaintiff here has not named a medical defendant and has not alleged that he suffers from any allergy or condition for which soy is contraindicated.  Analyzing Plaintiff's soy diet claim as a "conditions of confinement" claim, it fails.  The alleged risks of consuming a soy diet do not rise to the level of an Eighth Amendment violation.

Alternatively, the Court finds that the Defendants are entitled to qualified immunity on the alleged general health risks of consuming soy.  Qualified immunity shields government officials from liability where "their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Courts use a two part test to determine whether a defendant is entitled to qualified immunity: 1) whether the conduct complained of violates the Constitution; and 2) whether the right was clearly established at the time the conduct occurred.  *Id.* at 743 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).  Either element of the test may be reached first.  *Pearson*, 555 U.S. at 236.

Although qualified immunity is an affirmative defense, the burden of meeting the two part test rests on the plaintiff.  *Eversole v. Steele*, 59 F.3d 710, 717 (7th Cir. 1995).  The Supreme Court has emphasized the importance of resolving qualified immunity questions at the earliest stage possible of litigation.  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  The Seventh Circuit has also upheld dismissals on qualified immunity grounds in soy diet cases on a 12(b)(6) motion, which shares its standard with § 1915A.  *See Doe v. Village of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015).  The Court will dismiss on qualified immunity grounds where the

facts of the complaint, taken as true, fail to allege the violation of a clearly established right.

This Court has not found a single case that concludes that soy-based diets pose a serious risk to prisoners' health generally.  It has not found a case that holds that soy is nutritionally inadequate or that its inclusion in the prison diet violates the Constitution.  In fact, the Seventh Circuit specifically declined to hold that a soy-based diet violates the Constitution in at least one case.  *Johnson v. Randle*, 619 F. App'x 552, 554 (7th Cir. 2015).    The Court therefore finds that because no court has found a soy-based diet unconstitutional, the right is not clearly established and Defendants in this case are entitled to qualified immunity with respect to the claim that the inclusion of soy in the Pinckneyville diet subjected Plaintiff to unconstitutional conditions of confinement.

Accordingly, **Count 3** shall be dismissed without prejudice, for failure to state a claim upon which relief may be granted, and because Defendants are entitled to qualified immunity with reference to this claim.

## Pending Motions

Plaintiff has filed a motion for recruitment of counsel (Doc. 3).  The dismissal of the complaint without prejudice raises the question of whether Plaintiff is capable of drafting a viable amended complaint without the assistance of counsel.

There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010); *see also Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006).  Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant.  *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

Plaintiff's motion states that he wrote eleven letters, and his family made over 35 phone calls, in an effort to secure counsel, without success (Doc. 3, p. 1). This activity demonstrates that Plaintiff has made reasonable efforts to obtain counsel.

As to the second inquiry, Plaintiff claims that he has a limited education, consisting of "grade school only." He adds that "the prison's (only) jail house lawyer is doing all of the work. My education sucks." *Id*. Considering that information, the original complaint does not disclose what ability Plaintiff has to prepare a complaint on his own. The Court also notes that the online records of the IDOC shows that Plaintiff was released on parole at the end of May 2016. Presumably, he now would have more access to resources or assistance for the preparation of an amended complaint than when he was still in prison. At this juncture, the Court is merely concerned with whether this action can get out of the gate, so to speak. Given that the amended complaint must be limited to the claim in **Count 2** that prison officials were

deliberately indifferent to Plaintiff's medical condition, all that is required is for Plaintiff to give a factual account of the basis for his claim. This should include such information as: what steps did he take to obtain medical care, who did he contact, what information did he communicate to each official about his condition, what response did he get, and when those incidents occurred. Plaintiff alone has knowledge of these facts, and no legal training or knowledge is required to set them down on paper. Therefore, the recruitment of counsel is not warranted at this time and the motion (Doc. 3) is **DENIED** without prejudice. The Court will remain open to appointing counsel as the case progresses.

The motion for service of process at government expense (Doc. 4) is **DENIED** without prejudice. No service shall be ordered unless Plaintiff submits an amended complaint that states a viable constitutional claim. No motion is necessary in any case; the Court shall order service if the amended complaint survives threshold review under § 1915A.

**Disposition**

**COUNTS 1 and 2** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNT 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted, and on qualified immunity grounds.

Defendants **LASHBROOK, SPILLER, DIRECTOR of the IDOC, WEXFORD MEDICAL SOURCES, BAILEY,** and **UNKNOWN COMMISSARY OWNERS** are **DISMISSED** from this action without prejudice.

The Complaint (Doc. 1) is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that, should he wish to proceed with this case, Plaintiff shall file his First Amended Complaint, which shall be limited to the claim under **Count**

**2** for deliberate indifference to Plaintiff's medical condition(s), within 28 days of the entry of this order (on or before October 20, 2016).  It is strongly recommended that Plaintiff use the form designed for use in this District for civil rights actions.  He should label the pleading "First Amended Complaint" and include Case Number 16-cv-439-MJR.  For each claim, Plaintiff shall specify, *by name*,[1] each Defendant alleged to be liable, as well as the actions alleged to have been taken by that Defendant.  New individual Defendants may be added if they were personally involved in the constitutional violations.  Plaintiff should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004).  The Court will not accept piecemeal amendments to the original complaint. Thus, the First Amended Complaint must contain all the relevant allegations in support of Plaintiff's claims and must stand on its own, without reference to any other pleading.  Should the First Amended Complaint not conform to these requirements, it shall be stricken.  Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.   Failure to file an amended complaint shall result in the dismissal of this action with prejudice.   Such dismissal shall count as one of Plaintiff's three allotted "strikes" within the meaning of 28 U.S.C. § 1915(g).

No service shall be ordered on any Defendant until after the Court completes its § 1915A review of the First Amended Complaint.

---

[1] Plaintiff may designate an unknown Defendant as John or Jane Doe, but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to send Plaintiff a blank civil rights complaint form.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 22, 2016**

<u>**s/ MICHAEL J. REAGAN**</u>
**U.S. Chief District Judge**